***E-FILED - 10/20/08***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT KELLY WALTERS, | ) | No. C 04-0817 RMW (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| vs. | ) ) | |
| JOE MCGRATH, Warden, | ) ) | |
| Respondent. | ) ) | |

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his November 22, 2002 prison disciplinary hearing. Petitioner is currently serving a life term without the possibility of parole at Pelican Bay State Prison in Del Norte, California, following his 1988 conviction for double-homicide. On February 26, 2004, this court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition and petitioner filed a traverse. Shortly thereafter, petitioner was granted a stay in order to exhaust an additional claim in state court. After the state court claim was exhausted, the instant matter was reopened and petitioner amended the petition to add the newly exhausted claim. The court issued a renewed order to show cause. Respondent filed an answer, and petitioner did not file a new traverse.

# BACKGROUND

On February 21, 2002, Larry Witek, Deputy Director, Institutions Division, sent a letter to California prison wardens instructing them that inmates found with unauthorized possession of razor blades in, <u>inter alia</u>, Administrative Segregation Units, may be charged with "Possession of a Deadly Weapon," a Division A-1 offense. On May 6, 2002, prison officials discovered six razor blades in petitioner's cell and confiscated them. On September 6, 2002, Emergency Amendments to sections 3375 through 3375.5 and 3377 of Title 15 of the California Code of Regulations were published. These amendments revised certain provisions governing the inmate classification score system. In pertinent part, these amendments required inmates to be assessed eight points for Division A-1 offenses and sixteen points for possession of a deadly weapon where apparent use was intended.

On November 22, 2002, petitioner appeared before a disciplinary hearing to answer to a charge for his unauthorized possession of six razor blades that were found in his cell. Prison officials found petitioner guilty, ordered him to undergo counseling, reprimanded him, and referred him to the Institution Classification Committee ("ICC"). Prison officials had also initially revoked 380 days of good time credits, but these credits were completely reinstated on February 20, 2003 "in the interest of justice." (Resp. Ex. B at 5.) The ICC assessed petitioner twenty-four classification points, placed him in the Security Housing Unit for ten months, and upon completion of that placement, ordered him to serve a three-year mandatory term in a Level IV Maximum Security Prison.

On July 22, 2003, the Del Norte Superior Court denied petitioner's first habeas petition which included the same general claims presented in this court, with the exception of an ex post facto claim. The California Court of Appeal, First Appellate District, denied review on August 14, 2003, and the California Supreme Court denied review on October 1, 2003. On February 10, 2005, the Del Norte Superior Court denied petitioner's second habeas petition in which he alleged that prison officials applied the amended California Code of Regulations sections retroactively in violation of the United

States Constitution's prohibition against ex post facto laws. The California Court of Appeal and California Supreme Court denied petitions for review as successive in 2005 and 2006, respectively.

## DISCUSSION

### A. Proper Remedy

Respondent argues that because petitioner does not challenge the fact or duration of his confinement, but rather only the conditions of his confinement, his claims do not state a cognizable claim for federal habeas relief. The Supreme Court has declined to address whether a challenge to a condition of confinement may be brought under habeas. See Bell v. Wolfish, 441 U.S. 520, 526 n.6 (1979). However, the Ninth Circuit has held that "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003). The preferred practice in the Ninth Circuit has been that challenges to conditions of confinement should be brought in a civil rights complaint. See Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (civil rights action is proper method of challenging conditions of confinement).

Petitioner's claims do not challenge the duration or legality of his confinement or sentence under § 2254. Although petitioner was initially assessed a loss of 380 days off good time credits, these credits later were reinstated by the Chief Disciplinary Officer. (Resp. Ex. B at 5.) Instead, petitioner seeks relief from prison disciplinary proceedings that resulted in an increase in his classification score, a transfer to a maximum security institution, a reprimand and counseling. As such, petitioner's claims are directed at the conditions of his confinement, and no resolution of his claims could impact the length or fact of his confinement. Consequently, petitioner's claims are more appropriately addressed in a civil rights complaint pursuant to 42 U.S.C. § 1983.

Ordinarily, the instant petition for a writ of habeas corpus would be dismissed without prejudice to petitioner filing his claims in a civil rights complaint pursuant to 42 U.S.C. § 1983. However, the merits of petitioner's claims have been briefed by the

parties, the court has reviewed these briefs, and for the reasons discussed below, the court finds them to be without merit. As a result, there is no need for petitioner to expand additional time refiling his claims in a civil rights complaint.

**B.     Petitioner's Claims**

   1.     **Standard of Review**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. See Graham v. Connor, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

In order for a complaint to state a claim arising under federal law, it must be clear from the face of plaintiff's well-pleaded complaint that there is a federal question. See Easton v. Crossland Mortgage Corp., 114 F.3d 979, 982 (9th Cir. 1997). However, even though state law creates a party's causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law. See Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997).

Petitioner raises claims under the Due Process Clause, rhw Equal Protection Clause, and the Ex Post Facto Clause of the United States Constitution.

   **2.     Due Process**

Petitioner alleges that the prison failed to provide him with notice of the new rules under which he was charged with respect to the unauthorized possession of six razor blades. According to petitioner, because he was housed in the Administrative

1  Segregation Unit, he was fully dependant upon the prison to inform him of any and all
2  rule changes that could result in him being charged with a severe infraction.  Further, at
3  the disciplinary hearing, petitioner alleges that he was denied Due Process because he was
4  limited in the number of witnesses he could call and the evidence that he could present.

### a.  Notice

Petitioner claims that he was denied due process because he was not provided notice of the relevant rules with which he was charged at the disciplinary hearing.  With respect to disciplinary hearings, Wolff v. McDonnell, requires that an inmate be given notice of the charges against him.  418 U.S. 539, 556 (1974).  The fact that petitioner was given notice of his charges prior to his disciplinary hearing is not in dispute.

Rather, petitioner claims that he was not given notice of the change in prison rules that ultimately led to the charges he received.  To begin with, Petitioner's claim is contradicted by the record.  California Code of Regulations, Title 15, section 3006, at all relevant times stated that, "[i]nmates may possess only the personal property . . . received or obtained from authorized sources . . . .  Possession of contraband may result in disciplinary action . . . ."  Cal. Code Regs. tit. 15, § 3006.  Subsection (a) further states, "[i]nmates may not possess or have under their control any weapons . . . ."  C.C.R. tit. 15, § 3006(a).  The existing provisions of the CCR both before and after the September 2002 emergency amendments very clearly put petitioner on notice that he was in violation of prison policies with regard to unauthorized possession of razor blades.  At the disciplinary hearing, petitioner freely admitted that he possessed six razor blades and that he knew this violated prison rules.  He asserted that had he known the razor blades would be considered deadly weapons, as opposed to simply "dangerous contraband," he would have flushed them down the toilet.  Petitioner has no support for the argument that the due process requirement that he have notice of his charges was violated merely because unlawful possession of razor blades became arguably more serious following the adoption

of the emergency amendments.[1]

The memorandum issued by Larry Witek on February 21, 2002, instructing California wardens that they may treat unauthorized possession of razor blades as possession of deadly weapons did not alter the essential violation with which petitioner was charged. Petitioner had notice that he was in violation of section 3006(a) prior to the date that the razor blades were found in his cell. The emergency amendments adopted in September 2002 did not change the fact that petitioner was in the unauthorized possession of such a weapon.

### b. Witnesses

Petitioner next argues that he was denied due process because he was not allowed to call certain witness or to present certain testimony during his disciplinary hearing. This claim is without merit.

Although prisoners retain rights under the Due Process Clause, these rights are subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. Wolff, 418 U.S. at 556. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. With regard to an inmate's right to call witnesses and present evidence at a disciplinary hearing, this right needs to be balanced against the needs of the prison. Id. at 566.

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

Id.

Here, petitioner claims that the Senior Hearing Officer and Investigative Employee

---

[1] To the extent that the changed regulations raise an issue of ex post facto application of law, that issue is discussed in section C, infra.

denied petitioner the ability to interview eight of nine requested witnesses and to obtain certain evidence as a result of these interviews. Petitioner was allowed to interview Officer Lopez who found and confiscated the razor blades in his cell. The Senior Hearing Officer based denials for each of the other witnesses on relevance grounds. None of the denied witnesses was present at the time that the razor blades were found in petitioner's cell. Petitioner has not shown how any information that these individuals could provide would be relevant or would not be duplicative of information contained in Officer Lopez's report. Prison officials have the discretion to keep disciplinary hearings within reasonable limits and to refuse to call witnesses or compile documentary evidence. Wolff, 418 U.S. at 566. Even though Wolff does not require prison officials to provide a justification for these denials, id., here, the Senior Hearing Officer did provide reasonable grounds for the denials based on relevance. Thus, there was no deprivation of petitioner's due process as a result of these denials.

### 3.   Ex Post Facto

Petitioner next claims that his classification score was increased in violation of the United States Constitution's prohibition against ex post facto applications of law. Petitioner argues that prison officials applied the September 2002 emergency amendments to 15 C.C.R. §§ 3375.4(b)(1) and (b)(5) to increase his classification score by twenty-four points for a violation that occurred in May 2002, when such an increase was not authorized.

The Ex Post Facto Clause of the United States Constitution prohibits any statute that: (1) punishes as a crime an act previously committed, which was innocent when done; (2) makes more burdensome the punishment for a crime, after its commission; or (3) deprives one charged with a crime of any defense available according to law at the time when the act was committed. See U.S. Const., Art. I, § 10, cl. 1; see also Collins v. Youngblood, 497 U.S. 37, 41-46 (1990).

The Ex Post Facto Clause is violated only if the law: (1) is punishment, see Russell v. Gregoire, 124 F.3d 1079, 1083-84 (9th Cir. 1997); (2) is retrospective, see Lynce v.

1  Mathis, 519 U.S. 433, 441 (1997); and (3) disadvantages the offender by altering the
2  definition of criminal conduct or increasing the punishment for the crime, see id.
3    "'Changes in a prisoner's location, variations of daily routine, changes in
4  conditions of confinement (including administrative segregation), and denials of
5  privileges - matters which every prisoner can anticipate are contemplated by his original
6  sentence to prison - are necessarily functions of prison management that must be left to
7  the broad discretion of prison administrators.'" Jones v. Murray, 962 F.2d 302, 309 (4th
8  Cir. 1992) (quoting Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991)).  "It is precisely
9  because reasonable prison regulations, and subsequent punishment for infractions thereof,
10 are contemplated as part of the sentence of every prisoner, that they do not constitute
11 additional punishment and are not classified as ex post facto.  Moreover, since a prisoner's
12 original sentence does not embrace a right to one set of regulations over another,
13 reasonable amendments, too, fall within the anticipated sentence of every inmate." Id. at
14 309-10; see also Gilbert v. Peters, 55 F.3d 237, 238 (7th Cir. 1995) (Clause "does not
15 prohibit every alteration in a prisoner's confinement that may work to his disadvantage").
16   Petitioner's argument fails for two reasons.  First, petitioner has not provided any
17 evidence that his classification score was actually increased.  Respondent denied that
18 petitioner's classification score was increased, and petitioner has not provided any
19 evidence to the contrary.  Petitioner had ample opportunity to file a traverse in response to
20 respondent's answer to the renewed order to show cause, but has not done so.  Second,
21 even assuming that petitioner's classification score was in fact increased, as long as such
22 an increase was administrative and not punitive, no ex post facto violation occurred.  See
23 Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994).
24   The Ninth Circuit decision in Barnett is instructive.  In Barnett, a death row inmate
25 wrote a harassing letter to the parents of a key prosecution witness, in knowing violation
26 of 15 C.C.R. § 3135. Id.  In addition to the imposition of restrictions on his mail
27 privileges as provided for in section 3135, the inmate's classification was also increased
28

from grade A to grade B.[2]  Id.  The inmate argued that this classification increase violated due process because it was not authorized by section 3135.  Id.  The Ninth Circuit rejected this argument, finding that "Barnett was reclassified as an administrative measure and not as a punitive one. . . .  The corrections officer writing up this infraction recommended that the classification committee administratively review Barnett's classification so that corrections officials could better monitor his correspondence."  Id.  The Ninth Circuit held that "[i]n light of the broad discretion enjoyed by prison officials in making classification determinations, we cannot say that Barnett's administrative reclassification to allow prison officials to better monitor his mail was either arbitrary or capricious."  Id. (citing Toussaint v. McCarthy, 801 F.2d 1080, 1104 (9th Cir. 1986)).

      Likewise, petitioner's reclassification in this case is administrative rather than punitive.  As in Barnett, the classification allows prison officials to more appropriately monitor petitioner in light of his unlawful possession of a deadly weapon.  Changes to certain conditions of confinement are matters which every prisoner can anticipate are contemplated by his original sentence to prison.  Jones, 962 F.2d at 309.  They are functions of prison management and left to the broad discretion of prison administrators.  Id.  Such administrative decisions are not considered punishment for purposes of the ex post facto clause, and reasonable amendments to prison regulations that alter conditions of confinement are anticipated by an inmate's sentence.  Id. at 309-10.  Here, the September 2002 amendments were reasonable[3], and the changes in petitioner's

---

[2] Under the consent decree in Thompson v. Enomoto, condemned prisoners are classified as either condemned grade "A" or grade "B." No. C-79-1630-SAW (N. D. Cal. Oct. 23, 1980).  Grade A prisoners received additional privileges such as contact visits, telephone calls, and additional storage space.  See Barnett, 31 F.3d at 814 n.1.

[3] Prison officials determined that razor blades are deadly weapons because of their capacity to cause serious or lethal injury.  Despite petitioner's insistence that he possessed the razor blades in knowing disregard of the prison regulations for non-violent hobby purposes, defining razor blades as deadly weapons falls within the gamut of the deference owed to prisons to procure security policies that serve peneological interests.  See Turner v. Safley, 482 U.S. 78, 89 (1987); see also Bell, 441 U.S. at 520.

classification score are administrative rather than punitive.  Thus, petitioner's ex post facto claim fails.

### D. Equal Protection

Lastly, petitioner claims that his right to equal protection was violated because the new regulation allows similarly situated inmates to be treated differently with no rational basis.  As support for this argument, petitioner points out that under the new regulation inmates found with the unauthorized possession of razor blades "may be charged with possession of a deadly weapon."  (Resp. Ex. H.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim, a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials).

Petitioner fails to provide any evidence that his treatment was the result of invidious discrimination.  All other inmates in the Administrative Segregation Unit are subject to the same treatment if they are found with the unauthorized possession of razor blades.  In his original traverse, filed on January 26, 2005, petitioner refers to an "Inmate Dean" who was found in possession of multiple razor blades on April 2, 2002, approximately a month before petitioner's violation.  (Pet. Mem. Supp. Traverse, January 26, 2005, at 10.)  Inmate Dean was charged under the applicable version of the Code of Regulations available at that time.  Petitioner fails however to provide any further details or evidence surrounding Inmate Dean's situation.  Petitioner did not indicate whether Inmate Dean was housed in the Administrative Segregation Unit, whether his disciplinary hearing was conducted before or after issuance of the September 2002 amendments, what

Inmate Dean's ultimate punitive and administrative dispositions were, or any other details which would allow this court to compare petitioner's situation to Inmate Dean's. On their face, the regulations and subsequent amendments apply to Inmate Dean and all inmates in the same way as they apply to petitioner. Without any indication of invidious discrimination, petitioner's equal protection claim fails.

## CONCLUSION

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED. Further, this court finds as a matter of law that claims under § 1983 raised by this petition are without merit. The Clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

DATED: 10/17/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge